UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY BRADLEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF SACRAMENTO DEPARTMENT OF HUMAN ASSISTANCE,<br><br>　　　　　Defendant. | No.  2:19-cv-02419-DAD-CKD<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 41) |

This matter is before the court on the motion for summary judgment filed on behalf of defendant on March 21, 2022.  (Doc. No. 41.)  The pending motion was taken under submission by the previously assigned district judge on April 18, 2022.[1]  (Doc. No. 44.)  For the reasons explained below, defendant's motion for summary judgment will be granted.

**FACTUAL BACKGROUND[2]**

In this employment action, plaintiff alleges that her employer of twenty years, defendant County of Sacramento Department of Human Assistance ("defendant" or "the County"),

---

[1]  On August 25, 2022, this case was reassigned to the undersigned.  (Doc. No. 51.)

[2]  The relevant facts that follow are undisputed unless otherwise noted and are derived from the undisputed facts as stated by defendant and responded to by plaintiff (Doc. No. 45-2 ("DUF")), as well as the purportedly disputed facts as stated by plaintiff and responded to by defendant (Doc. No. 48-2 ("PUF")).

discriminated against her because of her race by rejecting her applications for promotions and also retaliated against her by increasing her workload, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and California's Fair Employment and Housing Act ("FEHA"). (Doc. No. 36.)  Plaintiff identifies as an African American woman.  (PUF ¶ 1; DUF ¶ 20.)

**A.      Plaintiff's Employment with the County**

Plaintiff has been employed with the County as a Human Services Specialist in the Department of Human Assistance since 2000.  (PUF ¶¶ 2–3; DUF ¶ 21.)  Plaintiff has remained in that position throughout her employment with the County.  (PUF ¶ 3; DUF ¶ 22.)  The County's class specification for the Human Services Specialist position describes the duties and responsibilities as follows:

> Under general supervision, performs duties in the provisions of public assistance benefits and/or basic employment services to customers and facilitates referrals to available resources, and/or applies regulations and procedures to determine eligibility for one or more public assistance programs.  Interfaces and coordinates with other department staff to provide customer services or to provide or clarify information.

(DUF ¶ 23.)  Human Services Specialists do not have duties and responsibilities related to program coordination, planning, development, and/or evaluation.  (DUF ¶ 59.)  A primary duty of a Human Services Specialist is to conduct intake interviews of individuals seeking to obtain public assistance.  (DUF ¶ 24.)  Typically, a full-time Human Services Specialist conducts 4–5 intake interviews per day, and this rate has remained consistent since 2016.  (DUF ¶ 24.)  The position of Human Services Specialist does not entail supervisory responsibilities.  (DUF ¶ 41.)  A Human Services Specialist does not have the authority to hire, transfer, suspend, layoff, recall, promote, or discharge other employees, or to recommend such action.  (DUF ¶ 42.)

**B.      The County's Employment Policies for Hiring and Promoting Employees**

The County's employment process is governed by the Civil Service Rules set by the Civil Service Commission, a public commission providing policy direction and oversight of the system of selecting and promoting civil service employees.  (DUF ¶ 1.)  Under these rules, the County assures that employment is based upon merit principles and that determination of qualifications be based upon a competitive examination for each position.  (DUF ¶ 2.)

To apply for employment with the County, an applicant must submit an application package consisting of two parts:  (1) the application itself, and (2) the civil service exam.  (DUF ¶ 3.)  In the first part, the application includes an applicant's personal and contact information, employment preferences and references, educational background, work experience, and a description of job duties related to each job listed, certificates and licenses, and skills.  (DUF ¶¶ 4, 5.)  In the second part, the civil service exam consists of a supplemental questionnaire that seeks from the applicant a more detailed explanation regarding how their training and experience make them uniquely qualified to perform the job duties required by the position for which they are applying.  (DUF ¶ 6.)  The first question on the civil service exam notifies the applicant that the application (first part) and supplemental questionnaire (second part) are administered as two separate documents, with the application being used only to determine if the applicant meets the minimum qualifications for the position, and the supplemental questionnaire being used to determine the applicant's exam score.  (DUF ¶ 7.)  An applicant is required to acknowledge this notification/instruction in order to proceed with the civil service exam.  (DUF ¶ 8.)

Once an applicant submits their application package, a technician in the Employment Services Division reviews the application portion to determine whether the applicant meets the minimum qualifications stated in the job announcement.  (DUF ¶ 9.)  The technician does not review the answers provided by the applicant in the civil service exam.  (DUF ¶ 10.)  If the applicant meets the minimum qualifications stated in the job announcement, the applicant advances to the exam phase, during which the applicant's answers on the questionnaire are reviewed and the applicant is issued a score and rank.  (DUF ¶¶ 11, 12.)  The applicant is then placed on a list of eligible candidates for the position.  (DUF ¶ 13.)  If an applicant fails to meet the minimum qualifications, then the technician will notify the applicant in writing by email that their application package was not accepted.[3]  (DUF ¶ 14.)  The emailed letter notifies the applicant that they do not meet the minimum qualifications, and it provides two avenues of

---

[3]  Plaintiff does not dispute that the County's policy provides that an applicant's application package will not be accepted if the applicant fails to meet the minimum qualifications, but plaintiff argues that the County does not consistently apply this policy.  (DUF ¶ 14.)  Plaintiff's argument in this regard will be addressed in the analysis section of this order below.

redress should the applicant be dissatisfied with the technician's decision.  (DUF ¶ 15.)
Specifically, the emailed letter advises the applicant that they can contact the technician within
five days from the date of the email to contest the decision, and they can file an appeal with the
Civil Service Commission within 30 days.  (DUF ¶¶ 16–19.)  If an applicant contacts the
technician to contest the decision, the applicant is provided the opportunity to supply additional
information, including additional work experience or education originally omitted from their
application.  (DUF ¶ 17.)  The technician will then consider the new information to determine
whether the applicant meets the minimum qualifications for the position.  (DUF ¶ 18.)

## C.  Plaintiff's Applications for a Lateral Transfer and Promotions[4]

On September 26, 2018, plaintiff applied for an interclass transfer to the position of Civil
Service Specialist in the Civil Service Commission Office.  (DUF ¶ 28.)  The County's policy
requires that in order to qualify for a transfer, "the top step of the employee's current class must
be within five (5) percent of the top step of the highest range of the class requested for interclass
transfer."  (DUF ¶¶ 29–30.)  At the time plaintiff applied for the transfer, the top step in the salary
of a Civil Service Specialist exceeded five percent of the top step in salary of a Human Services
Specialist (plaintiff's current position).  (DUF ¶ 31.)  Thus, Plaintiff did not qualify for this
interclass transfer.  (DUF ¶ 32.)  On September 27, 2018, the Employment Services Division
notified plaintiff by email that her transfer application was denied because the "salary difference
exceeds maximum allowance of less than 5%."  (DUF ¶ 33.)  That email stated, "[i]f you have
any questions, please reply to this email or call the Employment Services Division Certifications
Unit."  (DUF ¶ 34.)  Plaintiff did not contact the Employment Services Division regarding the
denial of her application for that interclass transfer.  (DUF ¶ 35.)

---

[4]  Despite plaintiff's allegation in her operative second amended complaint that "[i]n or about
September of 2017, Plaintiff applied for the Human Services Supervisor position that was
available," (Doc. No. 36 at ¶ 16), the parties do not dispute that plaintiff did not actually apply for
employment as a Human Services Supervisor in 2017.  (DUF ¶ 70.)  To the extent plaintiff
predicated her discrimination claims in this action on any allegedly unlawful rejection of an
employment application she submitted in 2017, those claims are dismissed.  Thus, plaintiff's
employment discrimination claims brought in this action proceed only as to the allegedly
unlawful rejections by the County of the three applications that plaintiff submitted in 2018 and
2019.

On December 12, 2018, plaintiff applied for a promotion from her position of Human Services Specialist to the position of Human Services Program Manager.  (DUF ¶¶ 36–37, 40.)  The class specification for the Human Services Program Manager position identifies the minimum qualifications, including that the applicant must have at least "two (2) years of supervisory experience in healthcare, mental health, financial assistance, community or social services work."  (DUF ¶ 38.)  The County defines "supervisory experience" as "having authority to hire, transfer, suspend, layoff, recall, promote[,] or discharge other employees, or to effectively recommend such action."  (DUF ¶ 39.)  In her application, plaintiff disclosed her employment only as a Human Services Specialist, a position that does not have supervisory experience, and thus, her experience as a Human Services Specialist alone did not qualify her for the position of Human Services Program Manager.  (DUF ¶¶ 43–44.)  In her application, plaintiff did not claim to possess supervisory experience, and she did not disclose any additional work experience.  (DUF ¶¶ 45–46.)  In response to the first question on the civil service exam, plaintiff responded that she "read and understood the above instructions," which explained that the application alone is used to determine whether an applicant meets minimum qualifications.  (DUF ¶ 47.)  Plaintiff admitted in the civil service exam that she had "less than two (2) years" of supervisory and/or management experience.  (DUF ¶ 48.)  On December 26, 2018, the Employment Services Division notified plaintiff by email that her application package was not accepted because she did not "meet the minimum qualifications as stated in the job announcement."  (DUF ¶ 49.)  The email advised that plaintiff could contact Jaycee Kaiser in the Employment Services Division for "further consideration of [her] application" within five (5) calendar days.  (DUF ¶ 50.)  The letter further advised that if plaintiff wished to appeal the employment decision, she could file a written appeal to the Civil Service Commission within 30 days.  (DUF ¶ 51.)  Plaintiff neither contacted Ms. Kaiser nor filed an appeal with the Civil Service Commission.  (DUF ¶ 52.)  Of the 155 applications that the County received between November 13, 2018 and December 21, 2018 for the Human Services Program Manager position, 33 applications were rejected on the basis that the applicant failed to meet the minimum qualifications.  (DUF ¶¶ 53–54.)  Of the accepted /////

1   applications, four applicants were hired into the Human Services Program Manager position, one

2   of whom identifies as African American.  (DUF ¶ 55.)

3          On February 13, 2019, plaintiff applied for a promotion to the position of Human Services

4   Program Planner.  (DUF ¶ 56–57.)  The class specification for the Human Services Program

5   Planner position identifies the minimum qualifications, including that the applicant must have at

6   least "three years of professional and/or supervisory experience in program coordination,

7   planning, development and/or evaluation."  (DUF ¶ 58.)  In her application, plaintiff disclosed her

8   employment only as a Human Services Specialist, a position that does not have supervisory

9   experience nor duties and responsibilities related to program coordination, planning, development

10  and/or evaluation.  (DUF ¶¶ 59, 61.)  Thus, plaintiff's experience as a Human Services Specialist

11  alone did not qualify her for the position of Human Services Program Planner.  (DUF ¶ 60.)  In

12  her application, plaintiff did not claim to possess supervisory experience or experience with

13  program coordination, planning, development, evaluation, or supervisory duties, and she did not

14  disclose any additional work experience.  (DUF ¶¶ 62–63.)  On March 7, 2019, plaintiff was

15  informed by email that her application package was not accepted because she did not meet the

16  minimum qualifications as stated in the job announcement.  (DUF ¶ 64.)  The emailed letter

17  advised plaintiff to contact Michelle Phulps in the Employment Services Division within five

18  days if she sought further consideration of her application package.  (DUF ¶ 65.)  The letter

19  further provided that should plaintiff wish to appeal the denial, she could file a written appeal to

20  the Civil Service Commission within 30 days.  (DUF ¶ 66.)  Plaintiff neither contacted Ms.

21  Phulps nor filed an appeal with the Civil Services Commission.  (DUF ¶ 67.)  Between May 26,

22  2019 and December 1, 2021, the County hired several individuals into the Humans Services

23  Program Planner position, four of whom identified as African American.  (DUF ¶¶ 68, 69.)

24  **D.     Plaintiff's Workload and Alleged Retaliation**

25         Plaintiff does not recall whether she ever discussed with her supervisors that she had filed

26  a lawsuit against the County in 2013 alleging age discrimination in employment.  (DUF ¶¶ 71–

27  72.)  Plaintiff admitted that she did not inform her supervisors when she appealed the district

28  court's judgment in that case to the United States Court of Appeals for the Ninth Circuit on

October 11, 2017.  (DUF ¶¶ 73–74.)  Plaintiff is not aware of whether any of her supervisors knew of her appeal to the Ninth Circuit in her case.  (DUF ¶ 75.)  Plaintiff contends that after she filed her appeal,[5] the County retaliated against her by increasing her usual workload of 2–3 intake interviews per day (a limited workload pursuant to an unspecified "ADA workplace proceeding") to 3–4 intake interviews per day (which is closer to the normal workload of 4–5 intakes per day).  (DUF ¶ 26; PUF ¶¶ 21–23.)  Plaintiff admits that she does not know who was responsible for the increase in her workload.  (DUF ¶ 26.)  When asked at her deposition whether her supervisors had increased her workload, plaintiff answered with respect to each individual supervisor:  "Not to my knowledge."  (DUF ¶ 27; Doc. No. 41-5 at 28–30.)

**PROCEDURAL BACKGROUND**

On December 3, 2019, plaintiff filed the complaint initiating this action.  (Doc. No. 1.)  After the court dismissed plaintiff's complaint with leave to amend and dismissed plaintiff's first amended complaint with leave to amend, plaintiff filed the operative second amended complaint ("SAC") on January 17, 2021.  (Doc. No. 36.)  In the SAC, plaintiff brings the following five claims under federal and state law against the County:  (1) racial discrimination in violation of Title VII, 42 U.S.C. § 2000e-5; (2) racial discrimination in violation of FEHA, California Government Code § 12940, *et seq*.; (3) failure to prevent racial discrimination in violation of FEHA, California Government Code § 12940(k); (4) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); and (5) retaliation in violation of FEHA, California Government Code § 12940(h).  (*Id.*)

On March 21, 2022, defendant filed the pending motion for summary judgment as to all of plaintiff's claims and concurrently filed a request for judicial notice.  (Doc. Nos. 41, 41-2.)  After receiving an extension of time in which to do so, on April 21, 2022, plaintiff filed an opposition to defendant's motion.  (Doc. No. 45.)  On May 4, 2022, defendant filed a reply thereto and objections to the evidence plaintiff submitted in support of her opposition.  (Doc. Nos. 48, 48-1.)

---

[5]  Plaintiff has been inconsistent regarding when exactly her workload increased; she alleged in her operative complaint that the increase occurred in 2018 after she filed her appeal, but she testified at her deposition that she filed her appeal in 2016 and that her workload was increased in either 2017 or 2018.  (DUF ¶ 26; Doc. Nos. 36 at ¶ 49; 41-5 at 24–25, 26–27.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

1   admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ.

2   P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773

3   (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for

4   summary judgment.").  The opposing party must demonstrate that the fact in contention is

5   material, i.e., a fact that might affect the outcome of the suit under the governing law, *see*

6   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e.,

7   the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see id.*

8   at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

9        In the endeavor to establish the existence of a factual dispute, the opposing party need not

10  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

11  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

12  trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

13  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

14  order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations

15  omitted).

16       "In evaluating the evidence to determine whether there is a genuine issue of fact," the

17  court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v.*

18  *Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing

19  party's obligation to produce a factual predicate from which the inference may be drawn.  *See*

20  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d

21  898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do

22  more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where

23  the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

24  there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

### ANALYSIS

26       As a preliminary matter, the court will first address defendant's evidentiary objections and

27  request for judicial notice.  Then the court will turn to consideration of whether defendant is

28  entitled to summary judgment in its favor on each of plaintiff's claims.

1    **A.     Defendant's Objections to Plaintiff's Evidence**

2           In support of her opposition to the pending motion for summary judgment, plaintiff

3    submitted only two pieces of evidence:  (1) a single-page photocopy of a document that is

4    attached as an exhibit to plaintiff's counsel's declaration and that counsel identifies as "County of

5    Sacramento Report on Program Managers without Degrees," and (2) plaintiff's own declaration,

6    which is dated April 21, 2022 and which does include any exhibits.  (Doc. No. 45-1.)  As noted,

7    defendant filed objections to plaintiff's evidence.  (Doc. No. 48-1.)  Plaintiff did not file a

8    response to those objections.

9           First, defendant objects to the exhibit attached to plaintiff's counsel's declaration on the

10   grounds that: (1) plaintiff has not established foundation and authentication of this purported

11   report, which appears to have been altered with handwritten notations and contain inadmissible

12   hearsay; and (2) plaintiff's counsel lacks personal knowledge of this document.  (Doc. Nos. 48-1

13   at 6, 48-2 at 5.)  Defendant also notes that the document is poorly photocopied, rendering it

14   unreadable.  (Doc. No. 48-2 at 5.)  Defendant's objections are well taken.  The photocopied

15   document is not only blurry, but there also appears to be a pie chart that may have been color-

16   coded in the original document and now appears completely blacked out in the photocopy.  As a

17   result, this apparent pie chart and its accompanying legend cannot be read.  There are also

18   handwritten numbers on the pie chart, perhaps added to clarify the information that is blacked out,

19   but it is not clear by whom, or when, such an alteration to the document was made, necessarily

20   calling into question the authenticity of the document.  Moreover, plaintiff's counsel's declaration

21   does not supply any information regarding how counsel obtained this particular document; the

22   exhibit is merely attached to the declaration and represented to be a "true and correct copy of

23   County of Sacramento Report on Program Managers without Degrees."  (Doc. No. 45-1 at ¶ 3.)

24   It is not clear where plaintiff's counsel derived this supposed title for the document, which itself

25   states at the top of the page:  "Human Services Program Manager Data for PRA."  (Doc. No. 45-

26   1.)  In plaintiff's declaration and opposition to the pending motion, plaintiff states that she

27   "received documents from defendant after a public records request was submitted to determine

28   how many Program Managers had a bachelor's degree," and "the report provided that 8 out of 17

active program managers did not have a bachelor's degree." (Doc. Nos. 45-1 at 5, ¶¶ 14, 16; 45 at 3.) Plaintiff does not, however, specify who submitted the public records request or when such a request was submitted. In addition, although plaintiff relies on this purported report as evidence that the County hires employees who do not meet the minimum qualifications despite its stated policy, plaintiff has not submitted any evidence that having a bachelor's degree was a job requirement during the years listed in the document, 1988 through 2007—over a decade before plaintiff submitted the job applications at issue in this action. For this additional reason, even if the document were deemed to constitute otherwise admissible evidence for the purposes of summary judgment, plaintiff has not established that the information purportedly reflected in the document has any relevance to her claims asserted in this action. Thus, defendant's objection as to this document is sustained.

Second, defendant objects to several statements made by plaintiff in her declaration as vague, irrelevant, lacking foundation, and lacking personal knowledge. (Doc. No. 48-1 at 2–6.) The court need not rule on these objections, however, because the court does not rely on this challenged evidence submitted by plaintiff in resolving the pending motion.

**B.    Defendant's Request for Judicial Notice**

In support of its motion for summary judgment, defendant filed a request for judicial notice of two documents: (1) the notice of appeal filed in *Bradley v. County of Sacramento, et al*, No. 2:13-cv-02420-TLN-DB, Doc. No. 80 (E.D. Cal. Oct. 11, 2017); and (2) Section 2.78.294 of the Personnel Ordinance of the Sacramento County Code, which defines the term "transfer." (Doc. No. 41-2.) Plaintiff did not address defendant's request for judicial notice in her opposition to the pending motion.

Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined

1   from sources whose accuracy cannot reasonably be questioned." *Id.* Courts "may take judicial

2   notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA,*

3   *Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Courts may also take judicial notice of county codes that

4   "can be accurately determined from other reliable sources." *Araujo v. Coachella Valley Water*

5   *Dist.*, No. 20-cv-01800-AJB-RBM, 2021 WL 5989943, at *2 (S.D. Cal. Dec. 17, 2021).

6          Accordingly, the court will grant defendant's unopposed request for judicial notice.

7   **C.     Defendant's Motion for Summary Judgment**

8          1.      Plaintiff's Discrimination Claims under Title VII and FEHA (Claims 1 and 2)

9          "Title VII prohibits employers from discriminating against an individual based on race."

10   *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-2).

11   Similarly, under the FEHA, it is unlawful for an employer "to discriminate against [a] person in

12   compensation or in terms, conditions, or privileges of employment" because of that person's

13   "race." Cal. Gov't Code § 12940(a).

14          In reviewing employees' claims that their employers have engaged in discrimination in

15   violation of Title VII and/or FEHA, courts rely on the three-part burden-shifting framework

16   enunciated by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).

17   *See Means v. City & Cnty. of San Francisco, Dep't of Pub. Health*, 749 F. Supp. 2d 998, 1004

18   (N.D. Cal. 2010) (noting that courts apply the same burden-shifting analysis to discrimination

19   claims brought under Title VII and FEHA); *see also Surrell*, 518 F.3d at 1105 (Title VII claims);

20   *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) (FEHA claims).

21          To make out a *prima facie* case under *McDonnell Douglas* in the context of an employee's

22   failure-to-promote claim, "a plaintiff must show that (1) she belongs to a protected class; (2) she

23   applied for and was qualified for the position she was denied; (3) she was rejected despite her

24   qualifications; and (4) the employer filled the position with an employee not of plaintiff's class,

25   or continued to consider other applicants whose qualifications were comparable to plaintiff's after

26   rejecting plaintiff." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir.

27   2005). "At summary judgment, the degree of proof necessary to establish a *prima facie* case is

28   /////

12

1  'minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Id.*

2  (quoting *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002)).

3      If the plaintiff establishes the *prima facie* case, a rebuttable presumption arises that the

4  employer unlawfully discriminated against the plaintiff, and the "burden of production then shifts

5  to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Dominguez-*

6  *Curry*, 424 F.3d at 1037.  If the employer meets its burden, then the rebuttable presumption

7  "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  The

8  employee must then "produce sufficient evidence to raise a genuine issue of material fact as to

9  whether the employer's proffered nondiscriminatory reason is merely a pretext for

10  discrimination." *Dominguez-Curry*, 424 F.3d at 1037.  At this final step, the employee "must do

11  more than . . . deny the credibility of the [employer's] witnesses," rather, she must offer "specific

12  and significantly probative evidence" that the employer's proffered reasons are pretextual.

13  *Schuler v. Chronicle Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986).  An employee can

14  establish pretext "either (1) directly by persuading the court that a discriminatory reason more

15  likely motivated the employer or (2) indirectly by showing that the employer's proffered

16  explanation is unworthy of credence." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256

17  (1981).  "Ultimately, the plaintiff's burden is to 'produce some evidence suggesting that [the

18  defendant's] failure to promote [her] was due in part or whole to discriminatory intent.'"

19  *Dominguez-Curry*, 424 F.3d at 1037 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123

20  (9th Cir. 2004)).

21      Here, defendant moves for summary judgment in its favor on plaintiff's Title VII and

22  FEHA discrimination claims on the grounds that plaintiff cannot establish a *prima facie* case as to

23  any of the three job applications that she submitted to the County.  (Doc. No. 41-1 at 16–20.)

24  First, defendant argues that plaintiff cannot satisfy the second element of these discrimination

25  claims because she was not qualified for any of those positions.  (*Id.*)  As to plaintiff's application

26  for the interclass transfer to the Civil Service Specialist position, defendant argues that the

27  undisputed facts on summary judgment establish that plaintiff's application was denied because

28  she did not meet the County's salary criteria and thus did not qualify for that transfer.  (Doc. No.

41-1 at 16–17.)  As to plaintiff's application for a promotion to the Human Services Program Manager position, defendant argues that the undisputed facts establish that plaintiff's application was rejected because she did not satisfy the minimum qualification of at least two years of "supervisory and/or management experience."  (Doc. No. 41-1 at 17–19.)  As to plaintiff's application for a promotion to the Human Services Program Planner position, defendant argues that the undisputed facts establish that plaintiff's application was rejected because she did not satisfy the minimum qualification of at least "three years of professional and/or supervisory experience in program coordination, planning, development and/or evaluation."  (Doc. No. 41-1 at 19–20; DUF ¶ 58.)  In addition, defendant argues that plaintiff has not submitted any competent evidence as to the fourth element of her discrimination claims—i.e., that the County "filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff."  (Doc. No. 41-1 at 18); *Dominguez-Curry*, 424 F.3d at 1037.  Defendant emphasizes the undisputed fact that the County hired individuals who identified as African American (i.e., individuals who are members of plaintiff's class) for the manager and planner positions to which plaintiff had applied. (Doc. No. 41-1 at 18, 20.)  Specifically, it is undisputed that the County hired four individuals to fill the program manager vacancies, one of whom identified as African American, and the County hired four individuals who identified as African American to fill the program planner position vacancies.  (Doc. No. 41-1 at 18.)

        In her opposition, plaintiff does not contest nor dispute that she lacked the minimum qualifications for these three positions.  Rather, plaintiff essentially argues that, despite the County's written policies that an applicant must satisfy a position's minimum qualifications, the County does not consistently apply this policy because the County hires individuals who do not satisfy the minimum qualifications.  (Doc. No. 45 at 7–9.)  Plaintiff does not, however, provide any competent evidence to support this argument.  As noted above, the court has already sustained defendant's evidentiary objections to the only documentary evidence that plaintiff has submitted in support of her opposition to the pending motion for summary judgment—a photocopy of a purported report reflecting that 8 out of 17 program managers hired by the County

1    between 1988 and 2007 did not have a bachelor's degree.  (Doc. No. 45-1 at 8.)  Even if the court

2    were to consider this document, plaintiff has not shown that this purported report has any

3    relevance to plaintiff's claims asserted in this case.  Notably, plaintiff's applications were

4    submitted ten years after the hiring dates listed in the purported report, and the County rejected

5    plaintiff's applications due to her lack of certain experience, not due to her lack of having a

6    bachelor's degree—indeed, the parties do not dispute that plaintiff has earned a bachelor's degree.

7    (*See* PUF ¶ 16.)  Moreover, although there is no dispute that having a bachelor's degree was a

8    minimum qualification for the program manager position at the time plaintiff applied for it in

9    2018 (*see id.*), plaintiff has not proffered any evidence that the County had similarly required a

10   bachelor's degree for the program manger position throughout the time period reflected in the

11   report—10–30 years ago.  Thus, plaintiff's reliance on this purported report is unavailing, even if

12   the court were to deem it admissible evidence.

13          Plaintiff's reliance on her own declaration—the only other evidence that she has

14   submitted for the court's consideration on summary judgment—is also unavailing because the

15   statements in her declaration are largely irrelevant and are insufficient to meet even the minimal

16   "degree of proof necessary to establish a *prima facie* case."  *Dominguez-Curry*, 424 F.3d at 1037.

17   For example, plaintiff declares that she has "witnessed younger and non-black employees who

18   have considerably less experience than [her] get either promoted to supervisor or manager

19   positions or move laterally to different positions such as Social Worker."  (Doc. No. 45-1 at 5, ¶

20   10.)  However, the statement that other employees had "less experience" than plaintiff is too

21   vague to be relevant or probative here.  The County's basis for rejecting plaintiff's applications

22   for promotion was plaintiff's lack of a specific *type* of required experience:  supervisory and/or

23   management experience, and professional and/or supervisory experience.  As for the employees

24   that plaintiff declares she witnessed move to lateral positions, plaintiff's statement in her

25   declaration is not relevant because the declaration is silent as to whether those employees

26   satisfied the salary criteria for their lateral transfer, which was the County's basis for denying

27   plaintiff's transfer application.  In another example, plaintiff declares that "[s]everal years back

28   [she] became aware that employees working in manager positions did not have the minimum

                                                    15

1  qualifications to work as Program Managers or Program Planners." (Doc. No. 45-1 at 5, ¶ 13.)

2  Not only is "several years back" too indefinite to be probative of the County's actions/policies

3  when plaintiff submitted the job applications at issue in this action, but the only elaboration

4  plaintiff provides as foundation for this statement is the purported report she received from the

5  County "after a public records request was submitted to determine how many Program Managers

6  had a bachelor's degree." (*Id.* at ¶ 14.)  As explained above, plaintiff has not shown how the

7  information reflected in this purported report is relevant to her claims brought in this action.

8  Finally, plaintiff declares that she applied for the Program Planner and Program Manager

9  positions, despite knowing that she lacked the stated minimum qualifications, because she

10  understood that the minimal qualifications were "optional." (*Id.* at ¶ 18.)  Yet, when plaintiff

11  received the emailed letters rejecting her applications based on her failure to satisfy the minimum

12  qualifications, plaintiff did not take any step to contest the rejections or seek clarification

13  regarding the County's policy, either by contacting the specified person in the Employment

14  Services Division or by filing an appeal with the Civil Service Commission.  (DUF ¶¶ 32, 52, 67.)

15     In light of these undisputed facts, including most importantly that plaintiff lacked the

16  requisite qualifications for each of three positions and that the County hired individuals who

17  identified as African American for the promotional positions, the court finds that plaintiff's vague

18  and unsubstantiated statements in her declaration are insufficient to meet her burden at the first

19  step of the *McDonnell Douglas* burden-shifting framework.  Plaintiff has failed to establish a

20  *prima facie* case of racial discrimination in the County's denial of her application for a lateral

21  transfer and rejection of her two applications for a promotion.[6]

22     Accordingly, defendant's motion for summary judgment as to plaintiff's Title VII and

23  FEHA discrimination claims will be granted.

24  //////

25  /////

26  _____

27  [6]  Because the court concludes that plaintiff has failed to make a *prima facie* showing as to her
discrimination claims, the court need not analyze the second and third steps of the burden shifting
framework:  whether defendant had legitimate, non-discriminatory reasons for not accepting

28  plaintiff's applications, and whether plaintiff has established pretext by specific evidence.

2. <u>Plaintiff's FEHA Claim of Failure to Prevent Discrimination (Claim 3)</u>

FEHA makes it unlawful "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination . . . from occurring" in the workplace. Cal. Gov't Code § 12940(k). To prevail "on a claim of failure to prevent discrimination," a plaintiff "must show three essential elements: 1) plaintiff was subjected to discrimination, . . .; 2) defendant failed to take all reasonable steps to prevent discrimination, . . . ; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." *Leland v. City and Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). "Under California law, a plaintiff cannot succeed on a cause of action for failure to prevent discrimination where no discrimination occurred." *Merrick v. Hilton Worldwide, Inc.*, No. 13-cv-1568-LAB-BGS, 2014 WL 5800272, at *9 (S.D. Cal. Nov. 7, 2014), *aff'd*, 867 F.3d 1139 (9th Cir. 2017) (citing *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 288 (1998) ("[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred.")).

Here, because the court has concluded that defendant is entitled to summary judgment on plaintiff's racial discrimination claims, plaintiff's claim that defendant failed to prevent discrimination necessarily fails as well. *See Lopez v. WinCo Holdings, Inc.*, No. 19-cv-05727-CRB, 2021 WL 3773619, at *19 (N.D. Cal. Aug. 25, 2021), *aff'd*, No. 21-16565, 2022 WL 17547804 (9th Cir. Dec. 9, 2022) (granting the defendant's motion for summary judgment on the plaintiff's failure-to-prevent claim because the plaintiff's discrimination claim failed); *Adetuyi v. City & Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1093 (N.D. Cal. 2014) (granting the defendant's motion for summary judgment on the plaintiff's failure-to-prevent claim because the plaintiff "failed to establish his claims of discrimination and retaliation").

Accordingly, defendant's motion for summary judgment as to plaintiff's FEHA claim of failure to prevent discrimination will also be granted.

3. <u>Plaintiff's Retaliation Claims under Title VII and FEHA (Claims 4 and 5)</u>

Title VII prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa,* 503 F.3d 947, 953

17

(9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

> for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3.  Like Title VII, California law also prohibits retaliation by an employer against an employee.  Specifically, FEHA makes it unlawful for "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]."  Cal. Gov't Code § 12940(h).

Under both Title VII and FEHA, to establish a retaliation claim "a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action."  *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir. 2007); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

Similar to discrimination claims brought under Title VII and FEHA, retaliation claims brought under these statutes are also analyzed using the *McDonnel Douglas* burden-shifting framework.  *See Sorensen v. Nat'l R.R. Passenger Corp.*, 786 F. App'x 652, 653 (9th Cir. 2019) (noting that FEHA retaliation claims "are assessed under the familiar three-step *McDonnell Douglas* burden-shifting framework")[7]; *McGinest*, 360 F.3d at 1124 ("Like discrimination, retaliation may be shown using the *McDonnell Douglas* burden shifting framework.").  Under this framework, if the plaintiff establishes a *prima facie* case, "the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action."  *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).  If the employer articulates a legitimate reason for its action, the plaintiff must then show that the reason given is pretextual.  *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th Cir. 2003); *see also Yanowitz*, 36 Cal. 4th at 1042 ("If the employer produces a legitimate reason for the adverse

---

[7]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

18

1     employment action, the presumption of retaliation 'drops out of the picture' . . . .").

2         Here, plaintiff's retaliation claims are solely based on her allegations that the County

3 retaliated against her by increasing her workload because she appealed from an adverse judgment

4 in another discrimination lawsuit that she had brought against the County in 2013.  (Doc. No. 36

5 at 8–10.)  As noted above, plaintiff has not been consistent in her accounts of when her workload

6 increased; she alleged in her SAC that she filed the appeal in 2018, but she testified at her

7 deposition that she filed her appeal in 2016 and her workload was increased in 2017 or 2018.

8 (DUF ¶ 26; Doc. Nos. 36 at ¶ 49; 41-5 at 24–25, 26–27.)  However, in connection with

9 defendant's pending motion, the parties do not dispute that plaintiff filed the appeal in her age

10 discrimination lawsuit on October 11, 2017.  (DUF ¶ 73.)  While the exact timing of the alleged

11 increase in plaintiff's workload remains unclear, according to plaintiff, she had been required to

12 perform only 2–3 intake interviews per day pursuant to an (unspecified) disability

13 accommodation under the Americans with Disabilities Act ("ADA"), and the County increased

14 her workload to 3–4 intake interviews per day.  (Doc. No. 45 at 10.)

15         In moving for summary judgment in its favor as to plaintiff's retaliation claims, defendant

16 argues that plaintiff "fails to establish a *prima facie* case because she cannot show that she

17 suffered an adverse employment action," and she cannot show that a causal link existed between

18 her protected activity (filing a notice of appeal in her age discrimination lawsuit) and the alleged

19 adverse employment action (increased workload).  (Doc. No. 41-1 at 22.)  According to

20 defendant, the alleged change in plaintiff's workload reflects a "return to normal," not an

21 increase, because full-time Human Services Specialists conduct 4–5 intake interviews per day.

22 (Doc. No. 41-1 at 23.)  Defendant argues that such a "return to normal" cannot be deemed an

23 adverse employment action because it does not "materially affect the terms, conditions, or

24 privileges of employment."  (Doc. No. 41-1 at 22–23) (quoting *Yanowitz*, 36 Cal. 4th at 1051).

25         Plaintiff counters that because she had been on a limited workload, the other employees

26 who consistently conducted 4–5 intake interviews per day were not similarly situated to plaintiff.

27 (Doc. No. 45 at 10.)  Plaintiff does not provide any detail whatsoever regarding her ADA

28 accommodation, including whether such an accommodation was still in effect when her workload

1   was increased, whether she discussed her ADA accommodation with her supervisors when her

2   workload was increased, or whether she even asked her supervisors to reinstate her limited, light-

3   duty workload in accordance with that ADA accommodation.  Nevertheless, the court need not

4   resolve the parties' competing characterizations of plaintiff's alleged change in workload

5   because, even assuming that plaintiff has shown that the change constitutes an adverse

6   employment action, plaintiff has not shown a causal link between her filing of the appeal in her

7   prior federal lawsuit and the change in her workload.

8          Plaintiff's sole argument regarding causation is that the workload increase was "the only

9   thing that has changed in [her] employment."  (Doc. No. 45 at 11.)  While not explicitly stated,

10  plaintiff is essentially arguing that the proximity in time between her filing of the appeal to the

11  Ninth Circuit and the increase in her workload is sufficient to establish the existence of a causal

12  link.  Plaintiff's argument in this regard fails for two key reasons.  First, plaintiff has not

13  proffered any evidence of when her workload increased, and her own accounts regarding when

14  that took place have been inconsistent.  In plaintiff's declaration (her most recent account),

15  plaintiff avoids mentioning a date altogether and instead declares that "after [she] appealed the

16  court's decision, [she] recalls [her] workload jumping up to 3 to 4 case intakes per day."  (Doc.

17  No. 45-1 at 6, ¶ 26.)  This lack of clarity and specificity regarding when plaintiff's workload

18  allegedly increased hinders the court's ability to draw an inference of a causal link based on

19  temporal proximity.  Second, and most important, plaintiff has not made any showing that her

20  supervisors had *knowledge* of her engagement in protected activity.  *See Kasbarian v. Equinox*

21  *Holdings, Inc.*, 739 F. App'x 397, 401 (9th Cir. 2018)[8] (quoting *McRae v. Dep't of Corr. &*

22  *Rehab.*, 142 Cal. App. 4th 377, 388 (2006)) (explaining that a plaintiff can make a *prima facie*

23  showing of a causal link "by producing evidence of nothing more than the employer's knowledge

24  that the employee engaged in protected activities and the proximity in time between the protected

25  action and the allegedly retaliatory employment decision").  Here, it is undisputed that plaintiff

26  does not recall whether she ever discussed her age discrimination lawsuit with her supervisors,

27

28
_____

[8]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   plaintiff admitted that she did not inform her supervisors when she filed her appeal in that earlier

2   case, and plaintiff is not aware of whether any of her supervisors even knew of her appeal.  (DUF

3   ¶¶ 71–75.)  In light of these undisputed facts, coupled with the plaintiff's scant and

4   unsubstantiated evidence, the court concludes that plaintiff has not established a *prima facie* case

5   of retaliation.  *See McGinest*, 360 F.3d at 1124–25 (affirming the district court's granting of

6   summary judgment in favor of the employer where the employee had "not presented sufficient

7   evidence to demonstrate a causal link between his complaint and the denial of the promotion").

8          Accordingly, defendant's motion for summary judgment on plaintiff's Title VII and

9   FEHA retaliation claims will also be granted.

10                                  **CONCLUSION**

11         For the reasons explained above,

12   1.      Defendant's request for judicial notice (Doc. No. 41-2) is granted;

13   2.      Defendant's motion for summary judgment (Doc. No. 41) is granted in its entirety;

14   3.      Judgment shall be entered in favor of defendant; and

15   4.      The Clerk of the Court is directed to close this case.

16         IT IS SO ORDERED.

17   Dated:   **March 28, 2023**                    _____

18                                          UNITED STATES DISTRICT JUDGE